ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

2010 DEC -7 PM 4: 26

| | | |
|---|---|---|
| JOSE FRET, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 309-094 |
| | ) | |
| WALT WELLS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate currently incarcerated at McRae Correctional Facility ("MCF") in McRae, Georgia, commenced the above-captioned petition under 28 U.S.C. § 2241 contesting, among other things, the execution of his sentence of confinement. Respondent has filed his response to the petition. (Doc. no. 6.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

I.   **BACKGROUND**

   A.   **Procedural Background**

Petitioner is serving a 70-month sentence for possession of cocaine hydrochloride with intent to distribute. (Doc. no. 6, p. 2 & Ex. 1.) He is scheduled for release on May 15, 2011, via good conduct time credit. (Id.) Petitioner filed this § 2241 petition contending that he has impermissibly been deprived of twenty-seven (27) days of good conduct time ("GCT"), after being found guilty by a disciplinary hearing officer ("DHO") of participating

in a group demonstration that consisted of boycotting three specific meals served at MCF, in violation of prison regulations. (See generally doc. no. 1.) Prior to filing the instant petition, Petitioner filed grievances relating to the claims at issue here, and appealed the denial of those grievances; Respondent concedes that Petitioner has exhausted his administrative remedies. (Doc. no. 6, p. 4 & Ex. 2, 3.)

Petitioner claims in his petition that the disciplinary procedures to which he was subjected violated due process. (See id. at 3-7, 12.) Petitioner also attempts to assert various causes of action under the Religious Land Use and Institutionalized Person's Act, the Equal Protection Clause of the Fourteenth Amendment, and the Free Exercise Clause and the Establishment Clause of the First Amendment. (See id. at 3-12.) As relief, Petitioner requests restoration of the 27 days of GCT and an injunction requiring MCF to serve kosher meals that do not include soy. (Id. at 12.)

The Court directed service to be effected on Respondent and instructed Respondent to show cause why Petitioner's writ should not be granted by filing a response within 20 days of the date of service. (Doc. no. 2.) Respondent contends that Petitioner was afforded due process with respect to his disciplinary hearing and that his other claims are not cognizable in this habeas petition or are otherwise without merit. (See generally doc. no. 6.)

### B. Disciplinary Charges and Proceedings

Respondent provides that on January 28 and 29, 2009, staff at McRae became aware of what they believed to be an inmate food boycott, which involved a group of inmates refusing to eat the provided religious diet meals. (Doc. no. 6, Ex. 4, ¶ 6.) Respondent further provides that the suspected boycott was identified as specifically targeting the evening meal

2

served on January 28, 2009, and the morning and noon meals served on January 29, 2009. (Id.) According to Respondent, an initial investigation into the suspected food boycott identified Petitioner as a possible participant since he did not receive the meals that were identified as the target of the suspected boycott. (Id. ¶ 7.)

Accordingly, on January 29, 2009, Petitioner was placed in the Special Housing Unit pending an investigation of his participation in the suspected boycott. (Id. ¶ 8 & Attach. 1.) Respondent maintains that the investigation into Petitioner's incident report was suspended pending the results of an investigation by the institution's Special Investigation Services ("SIS"). (Id. ¶ 10.) Respondent further states that the SIS investigation of 119 alleged inmate participants was finalized by Respondent on February 23, 2009. (Id.) On February 26, 2009 an incident report was completed charging Petitioner with Engaging in a Group Demonstration in violation of Code 212 of the disciplinary regulations. (Id. ¶ 11.) A copy of the incident report was provided to Petitioner. (Id., Ex. 4, ¶ 10 & Attach. 2.) Also on that day, an investigator assigned to Petitioner's case advised Petitioner of his right to remain silent at all stages of the disciplinary process. (Id. ¶ 12 & Attach. 2, § 23.) The investigator then proceeded to question Petitioner about his involvement in the suspected boycott. (Id. ¶ 13 & Attach. 2, §§ 26, 27.) Respondent provides that the investigator concluded, based on the report from the reporting staff member and the investigation completed by the SIS department, that there was sufficient evidence to continue processing the incident report and forwarded the report to the Unit Disciplinary Committee ("UDC") for a hearing. (Id. ¶ 13 & Attach. 2, §§ 26, 27.)

The UDC held a hearing on March 4, 2009, at which Petitioner appeared and

3

provided a statement maintaining that he did not participate in a Group Demonstration, and that he never goes to breakfast and usually eats lunch in his housing unit. (Id. ¶ 15.) Due to the nature of the allegation against Petitioner, the UDC made no decision and referred the matter for a hearing by a DHO. (Id. ¶ 15 & Attach. 2, §§ 17-19.)

On March 4, 2009, the UDC also provided Petitioner with notice of his rights before the DHO, including his right to call witnesses, to present evidence, and to request assistance from a staff representative. (Id. ¶ 16 & Attachs. 4, 5.) Petitioner chose to exercise his rights, and at the hearing on April 29, 2009, Petitioner, as well as Petitioner's staff representative and his requested witness, provided statements on his behalf. (Id. ¶¶ 17, 18 & Attach. 6, § III.)

On May 1, 2009, the DHO issued his written decision. (Id. ¶¶ 17, 18 & Attach. 6, § IX.) In making his decision, Respondent explains that the DHO considered the statements of Petitioner as well as those of Petitioner's staff representative and witness. (Id. ¶19 & Attach. 6, § III(D).) The DHO also considered the meal monitoring records from MCF, the January 29th interview questionnaire, and a memorandum from the Assistant Chief of Security.[1] (Id.) According to the DHO's report, the meal monitoring records indicated that he regularly received his noon and evening meals during the period leading up to the food boycott, but that he did not receive the meals identified as part of the group demonstration. (Id., Attach 6, § V.) Furthermore, the DHO noted that when asked by his Unit Manager why he participated in the group demonstration, he responded, "I went, I saw the food and I left."

---

[1] The DHO did not consider the SIS investigation in making his decision because there was enough evidence to support the charge absent the investigation. (Doc. no. 6, Ex. 4, ¶ 20 & Attach. 6, § III(E).)

4

(Id.) The DHO also noted that Petitioner's Unit Manager had told Petitioner on the morning of January 29, 2009, that any inmate who continued not to receive facility-prepared food would be subject to discipline, but that he still chose not to receive lunch that day.[2] (Id.) In addition, the memorandum written by the Assistant Security Chief indicated that he monitored the serving of the Kosher meal at noon on January 29th and that he observed only one inmate participate in the meal (who was not Petitioner).[3] (Id.)

Based on this evidence, the DHO found Petitioner guilty of participating in the Group Demonstration and sanctioned him with a loss of 27 days of GCT. (Id. ¶¶ 21, 22 & Attach. 6, §§ V & VI.) The DHO explained that he had imposed this sanction because such behavior "threatens the safety of all inmates as well as the overall security of the facility. In the past, group demonstrations have led to ser[i]ous damage to facilities as well as ser[i]ous injury to staff and inmates alike, to both people involved and people not involved in the demonstration." (Id. § VII.) With these facts in mind, the Court turns to the merits of the claims raised in the § 2241 petition.

## II. DISCUSSION

### A. Due Process Claim

Petitioner claims that his due process rights were violated during the course of the

---

[2]Petitioner indicated to the DHO that because of his lack of English proficiency he did not understand what his Unit Manager was saying to him during the interview conducted on January 29, 2009. (Doc. no. 6, Ex. 4, Attach. 6, § V.) The DHO found that Petitioner's responsive answers to the Unit Manager's questions and his failure to ask for a translator indicated that he did understand the Unit Manager during the interview. (Id.)

[3]This one inmate did not receive an incident report. (Doc. no. 6, Ex. 4, Attach. 6, § V.)

5

events described. In particular, he asserts that the DHO's adverse decision, which resulted in the loss of 27 days of GCT, violated his constitutional due process rights. (See generally doc. no. 1.) On the other hand, Respondent contends that Petitioner received all the rights to which he was entitled, and therefore, he fails to provide a basis for relief. (See doc. no. 6, pp. 4-12.) Respondent has the better argument.

In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. However, a prisoner facing a disciplinary hearing is still entitled to compliance with the following minimum due process protections: (1) written notice of the charges against him at least 24 hours before his hearing; (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in his defense. Id. at 563-67; see also Asad v. Crosby, 158 F. App'x 166, 172-73 (11th Cir. 2005); Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999).

In addition to these procedural due process requirements, the Supreme Court has explained that the degree of proof required at a prison disciplinary hearing to satisfy due process is significantly lower than that required in a criminal prosecution. In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court concluded that a finding that "some evidence" supports the decision of a prison disciplinary board is enough to satisfy the minimum due process requirements for prisoners facing loss of GCT:

> This standard is met if "there was some evidence from which the conclusion

of the administrative tribunal could be deduced . . . ." United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. [103,] 106 . . . [(1927)]. Ascertaining whether this standing is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id. at 455-56. The Eleventh Circuit has further explained the limited judicial review that federal courts may undertake in reference to prison disciplinary actions:

> The federal courts cannot assume the task of retrying all prison disciplinary disputes. No de novo review of the disciplinary board's factual finding is required, but the courts must consider whether at least the decision is supported by "some facts"--"whether any evidence at all" supports the action taken by prison officials.

Young v. Jones, 37 F.3d 1457, 1460 (11th Cir. 1994) (quoting Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981)).

Here, the Court concludes that the procedural due process requirements were met with respect to Petitioner's disciplinary hearing and that "some evidence" supports the DHO's decision. Indeed, as noted above, on February 26, 2009, Petitioner was advised of his rights and was provided with a copy of the incident report notifying him of the charges against him. (Doc. no. 6, Ex. 4, ¶ 10 & Attach. 2.) The following day, the UDC referred the matter to the DHO for a hearing that was held on March 4, 2009. (Id. ¶ 13 & Attach. 2, §§ 26, 27.) Petitioner was also advised of the rights afforded to him at his disciplinary hearing, which included, among other things, his rights to have a staff representative provide a statement on his behalf and present evidence. (Id., Attach. 4). Indeed, as noted in the DHO Report, Petitioner chose to exercise these rights; he was represented by a staff representative and called a witness to make a statement on his behalf. (Id., Attach. 6, § III.) After

7

Petitioner exercised his rights at the disciplinary hearing, the DHO issued a detailed report explaining the evidence upon which he relied in reaching his decision, as well as his reasons for sanctioning Petitioner with a loss of 27 days of GCT. (Id. § V.) The DHO Report indicates that a copy was delivered to Petitioner on May 15, 2009, and Petitioner does not contest that he received this report. (Id. § IX.) In fact, Petitioner attached a copy of the DHO Report to his § 2241 petition. (See doc. no. 1, Ex. C.)

Finally, the Court finds that the decision of the DHO is supported by "some evidence." Indeed, Petitioner's own statements to the DHO, as well as the meal monitoring data and memorandum from Assistant Chief of Security, demonstrate that Petitioner did not eat the meals that were identified as the target of the Group Demonstration. Accordingly, the Court finds that Petitioner's claim that he was deprived of due process and is entitled to restoration of 27 days of GCT is without merit and fails to provide a basis for relief.

### B. Remaining Claims

As noted above, Petitioner also attempts to assert various causes of action under the Religious Land Use and Institutionalized Person's Act, the Equal Protection Clause of the Fourteenth Amendment, and the Free Exercise Clause and the Establishment Clause of the First Amendment. Specifically, Petitioner contends that other inmates who participated in the suspected boycott were not disciplined and that the food he is receiving at McRae is not kosher. However, these claims are not appropriate in this § 2241 petition. Indeed, the sole function of habeas corpus "is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose." Cook v. Hanberry, 592 F.2d 248, 249 (5th Cir.

1979), *revised by* 596 F.2d 658 (5th Cir. 1979).[4] "Habeas corpus is not available to prisoners complaining only of mistreatment during their legal incarceration." Id.

Here, however, the factual allegations raised in the remaining claims listed above challenge the conditions, rather than the fact or duration, of Petitioner's confinement. Such allegations may be appropriate in a civil rights complaint, but do not state cognizable grounds for relief in a § 2241 petition.[5] Accordingly, Petitioner's remaining claims should be dismissed for failure to allege grounds on which § 2241 relief may be granted.

That said, at least as to Petitioner's equal protection claim, the Court recognizes that other courts have allowed federal prisoners to bring similar claims in § 2241 petitions. See, e.g., United States v. Tamayo, 162 F. App'x 813, 815 (10th Cir. 2006) (considering alien's "equal protection" challenge to "execution" of his sentence under § 2241). However, even if Petitioner's equal protection claim was appropriate in this § 2241 petition, this claim fails on the merits. Indeed, this claim appears to be based on Petitioner's contention that other inmates who did not pick up the targeted meals did not receive an incident report and accordingly were not disciplined because they performed certain necessary jobs at McRae. (See doc. no. 1, pp. 3-4.) In order to state a viable equal protection claim, a prisoner must allege: (1) that he has been treated differently from other "similarly situated" inmates, and

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

[5] Even if Petitioner had filed a civil rights complaint under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), he still might not be entitled to relief in federal court. See Alba v. Montford, 517 F.3d 1249, 1254 (11th Cir. 2008) (holding that prisoners in a private federal facility are not entitled to Bivens relief when adequate state remedies are available).

9

(2) that this discriminatory treatment is based upon a constitutionally impermissible basis, such as race. Jones v. Ray, 279 F.3d 944, 946-47 (11th Cir. 2001) (*per curiam*). Here, even assuming *arguendo* that other inmates who did not pick up the targeted meals were not disciplined, Petitioner has not shown that this treatment was based on a constitutionally impermissible basis. Indeed, Petitioner admits that any disparate treatment was based on certain jobs held by these other inmates. Therefore, even if Petitioner's equal protection claim were appropriate in this § 2241 petition, his claim fails on the merits. Accordingly, Petitioner is not entitled to relief under § 2241 for any of his remaining claims.

### III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this ____ day of December, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE